**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**Garland Coal and Mining Company, Intervenor,**

v.

**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA; International Union, United Mine Workers of America, District 21; International Union, United Mine Workers of America, Local 2428, Respondent.**

No. 81–2272.

United States Court of Appeals, Tenth Circuit.

Feb. 15, 1984.

Diana Ceresi, Washington, D.C. (William Wachter, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on brief), for petitioner.

A. Randall Vehar, Washington, D.C. (Willard Owens and Marilyn Townsend, Washington, D.C., with him on brief), for respondents.

Lynn Paul Mattson of Nichols & Wolfe, Inc., Tulsa, Okl., on brief, for intervenor.

Before McWILLIAMS, LOGAN, and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

Petitioner, the National Labor Relations Board, seeks enforcement of, and respondents, the International Union, United Mine Workers of America, the International Union, United Mine Workers of America, District 21, and the International Union, United Mine Workers of America, Local 2428, as cross petitioners, seek review of, an order of the Board. The Board found the Union to have violated Section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e), by enforcing, or attempting to enforce, the "Repair and Maintenance Work" provision of a collective bargaining agreement between the International Union and Garland Coal Company. Garland Coal is a Missouri corporation with strip mining operations at various locations, including the Rose Hill Mine in Oklahoma. The Board's Decision and Order appears as International Union, United Mine Workers of America, et al, 258 NLRB 56 (1981). Our study of the matter convinces us that the Board's order should be enforced.

We do not propose to recite here the complete chronology of events, inasmuch as they are fully set forth in the Board's Decision and Order. Our starting point is the "Repair and Maintenance Work" provision in the National Bituminous Coal Wage Agreement of 1978, the collective bargaining agreement between Garland Coal and the International Union. Article 1(a), sec-

tion (g), paragraph (2), of that agreement provides as follows:

Repair and Maintenance Work—Repair and maintenance work customarily performed by Classified Employees at the mine or central shop shall not be contracted out except ... (b) where the Employer does not have available equipment or regular Employees with necessary skills available to perform the work at the mine or central shop, *provided, however, that the work shall be performed by UMWA members to the extent and in the manner permitted by law.* (Emphasis ours.)

The italicized portion of the "Repair and Maintenance Work" provision in the collective bargaining agreement between Garland Coal and the International Union is the particular language with which we are here concerned. In this court, at least, it appears that the parties agree that the italicized portion in the "Repair and Maintenance Work" provision violates 29 U.S.C. § 158(e), which seeks to prohibit so-called "hot cargo" clauses in collective bargaining agreements whereby an employer agrees, generally at union insistence, that he will not subcontract, for example, any work to nonunion subcontractors. *National Woodwork Mfrs. Ass'n v. NLRB,* 386 U.S. 612, 634–35, 87 S.Ct. 1250, 1262–1263, 18 L.Ed.2d 357 (1967); *Amax Coal Co. v. NLRB,* 614 F.2d 872, 887–88 (3d Cir.1980).

In this Court, the Union's position is that at no time was it seeking to enforce the "hot cargo" clause in the collective bargaining agreement between it and Garland Coal, but was seeking to enforce only the "work preservation" clause in the "Repair and Maintenance Work" provision, namely, that part which provides that Garland Coal would not contract out any repair and maintenance work where it has available equipment and regular employees with necessary skills to perform the required work at the mine. Such is not our reading of the record.

■ As discussed in the Board's Decision and Order, the present dispute arose when Allen McCoy, a welder at Garland's

Rose Hill Mine, complained to management on several occasions that Garland was regularly contracting out routine repair and maintenance work on company equipment to nonunion shops. That was the tenor of the complaint throughout the first three steps provided for in the grievance procedure. It was only later that the Union made a slight, but somewhat ambiguous, shift in position by asserting that its complaint basically concerned what work was being subcontracted, and that it was not really concerned with whether the subcontracted work was performed by nonunion persons. Such, in our view, does not expiate any earlier violations of the Act. And our study of the record indicates that there is support for the Board's finding that the Union, in steps one through three of the grievance procedure, was complaining, in a substantial part, about the fact that repair and maintenance work was being contracted out to companies that were nonunion, and that such is a reaffirmation of the prohibited "hot cargo" clause. *See Frito-Lay, Inc. v. Retail Clerks Union Local 7,* 629 F.2d 653 (10th Cir.1980).

■ The International Union, United Mine Workers of America, as distinguished from District 21 and Local 2428, argues that it is not bound by the acts of its subordinate bodies, and that, accordingly, there is no evidence that it, the International Union, violated Section 8(e) of the Act, even assuming that the District and the Local were guilty of such violations. The Board rejected this argument, as do we. The International, not the District or the Local, is the body certified as the exclusive representative of Garland's employees. Furthermore, the unlawful "hot cargo" clause is in the master bituminous coal agreement, and is signed by the International's president. Finally, under the International's constitution the International has delegated its enforcement duties to the District and the Local. It was on this general basis that the Board concluded that the District and the Local were acting as agents for the International. Under the circumstances described, we are in accord.

The cross-petitioners also suggest that the present controversy is, with the passage of time, moot, since the collective bargaining agreement between the International Union and Garland has now expired. We do not believe the matter is moot. Nor do we find the remedial orders overly broad. Therefore, the order should be enforced.

Order enforced.